## M. J. NASH AND OTHERS V. W. MILBURN.

A guardian had sold two slaves of his wards by virtue of an order of sale
from the County Court. The sale was reported to and confirmed by the
County Court. The wards instituted suit in the District Court for the
slaves, before the guardian had closed his guardianship by settlement in
the County Court, whilst they were perhaps still under guardianship,
against a subsequent purchaser of the slaves. The petition was in the
ordinary form of one averring ownership generally, wrongful detention,
&c., and neither made the guardian a party defendant, nor sought to revise
or set aside any order or decree of the County Court, nor charged against
the defendant fraud or collusion with the guardian. During the pendency
of the suit, the guardian settled his account with the court; paid over to
his wards their distributive shares of the estate which had been under his
care, and was finally discharged from his trust. *Held*, that the District
Judge properly instructed the jury, that "the proceedings of the Probate
Court are not void, and cannot be enquired into in this suit. The plain-
tiffs' remedy was in the Probate Court, before the guardian made his final
settlement, or by a revision and correction of the settlement and the orders
and decrees of that court, by a proceeding in this court for that purpose."

In a proceeding to review or set aside the orders and decrees of the County
Court, if complained of or sought to be avoided, in such a case, the guar-
dian is a proper party defendant; to whom should be afforded an opportu-
nity to show the validity of the proceedings in the County Court.

APPEAL from Smith. Tried below before Hon. R. A. Reeves.
This suit was instituted on the 18th day of October, 1858.
Cooper B. Nash was appointed and qualified as guardian of the
persons and estates of the minors, Mary E., Margaret L., and
Martha H. Nash, then his minor children, on the 26th day of
January, 1857. At the February Term, the County Court or-
dered the slaves in controversy to be sold at public auction for
cash; which sale was made on the first Tuesday of April, 1857,
and the report thereof made to said court on the 28th day of June,
1858, stating that Drewry Smith purchased the said slaves at
said sale for the sum of eleven hundred dollars, which sale was
confirmed by the court. At the April Term of the County Court,
1859, the guardian, C. B. Nash, made a final settlement of his
accounts and was discharged. The decree of the court recited
that the estates of the wards consisted of money, and that the

share of each of them was two hundred and sixty-four dollars and eighty-eight cents, and that the same had been paid over to them respectively, less $2 94, a balance due one of them, which was deposited in said court for her.

On the trial, the plaintiffs proved that Drewry Smith bid off the negroes for the sum of eleven hundred dollars; that Cooper B. Nash refused to sign a bill of sale to him for the negroes, giving as a reason for his refusal that they had not sold for a sufficient price. Also, that Nash requested him to take the negroes home, promising to call for them on the next day. About six weeks afterwards, Nash took them away. Smith testified that he paid no money to Nash, and after his refusal to sign the bill of sale that he no longer regarded the transaction as a purchase. That he had bid them off in good faith, and would have taken them on the day of sale, although he then had but four hundred dollars with which to meet his bid; Nash having agreed to wait upon him for the balance. He also stated that he did not sell the ne-groes to Nash.

Plaintiff introduced another witness who stated that Nash told him the negroes had not sold for an adequate price, and that Smith should not have them. The witness further said that the negroes were worth thirteen hundred dollars; which price he would himself have given for them, but for being advised that the title was not good.

Plaintiffs introduced the defendant as a witness, who testified that he met Nash by chance, having never seen him before, who offered to sell him the negroes, and informed him that he had previously sold them to Smith by order of the court, as the prop-erty of his children, (the plaintiffs') and that he had purchased them back. Witness stated that he purchased them at the price of thirteen hundred dollars, of which he paid to Nash three hun-dred dollars cash; afterwards paid him about seven hundred dol-lars, the balance remaining unpaid, and for which a judgment then existed against him. He stated that he knew nothing of the transactions between Smith and Nash in regard to the negroes, except through the information given him as above stated.

Nash v. Milburn.

The defendant read in evidence transcripts from the records of the County Court referred to above, and also in the opinion.

The case is fully stated by Mr. Justice Bell hereafter.

*B. T. Selman*, for the appellants.

*T. W. Jones*, for the appellee.

BELL, J.—This suit was instituted by Mary E. Henderson, joined by her husband, T. H. Henderson, and M. Isabella Nash, and Martha Nash, against the appellee, for the recovery of two negro slaves, which the petition alleged to be the property of the plaintiffs and to be wrongfully and unlawfully held by the defendant. The defendant in the court below answered that the plaintiffs were the children and wards of one Cooper B. Nash; that said Cooper B. Nash had sold the two negro slaves in controversy, in obedience to an order of the County Court of Smith county; that at said guardian's sale one Drewry Smith became the purchaser of said negroes; that said Cooper B. Nash afterwards purchased the negroes from Drewry Smith, and that the defendant afterwards purchased the negroes, for a valuable consideration, from Cooper B. Nash. At the Spring Term, 1859, of the District Court, which was the term when the cause was tried, the defendant amended his answer, and set forth that since the institution of the suit the former guardian of the plaintiffs, Cooper B. Nash, had made a final settlement of his guardianship in the County Court, and had been discharged from his guardianship; and the decree of the County Court, showing the settlement and the discharge of the guardian was attached to the amended answer. This decree of the County Court recited that the guardian had settled with two of the wards, and held their releases, and that he presented vouchers against the other ward amounting to a sum within two or three dollars of her distributive share of the estate, which balance of two or three dollars was deposited in court for the ward. Upon the coming in of this amended answer, the petition was amended, denying that Cooper Nash, the guardian, had settled with and satisfied the plaintiff, M. J. Nash.

50Y

The amended petition also denied that the guardian ever sold the negroes to Drewry Smith, and charged that the pretended sale to Drewry Smith was a fraudulent contrivance to deprive the plaintiff M. J. Nash, of her rights in the negroes. The amended petition also charged that the defendant Milburn had actual and constructive notice of all the circumstances attending the pretended sale by Cooper Nash, as guardian, to Drewry Smith; and alleged that if Cooper Nash had been discharged from his guardianship by the County Court, such discharge had been falsely and fraudulently obtained by him, without filing any exhibit or giving legal notice, and that the order of the County Court so discharging him was either void, or would be reversed by the District Court to which the plaintiff, M. J. Nash, intended to remove it.

It will be observed that the suit was instituted by the plaintiffs as if they were all persons of full age, and not under guardianship; for the original petition says nothing about the guardianship. It will also be observed that no question is made, either in the original or amended answer, as to the capacity of the plaintiffs to maintain the action.

On the trial it was made to appear, that the pretended sale of the negroes by Cooper Nash as guardian, took place on the first Tuesday of April, 1857; that the sale by Cooper Nash to the defendant, Milburn, was made on the 24th day of November, 1857, and that the account or report of the sale to Drewry Smith was made to the court by the guardian, at the June Term, A. D. 1858, and then confirmed by the County Court. It was also shown that Cooper Nash, the guardian, never made any conveyance of the negroes to Drewry Smith; that he refused to do so, saying that the negroes did not sell for enough; that he requested Drewry Smith to keep the negroes for the use of them, until he came for them; that Drewry Smith kept them about six weeks, when Cooper Nash took them away, and that Drewry Smith never paid Nash any thing for them. The orders of the County Court, appointing Cooper Nash guardian of the plaintiffs, authorizing the guardian to sell the negroes upon his written application, confirming the sale to Drewry Smith upon the report of it made by the

guardian, and also the decree of the court showing the final settlement of the guardianship by Cooper Nash, and discharging him from the guardianship, were read in evidence by the defendant. It is also proper to remark, that upon the coming in of the amended answer of the defendant, two of the plaintiffs, Mrs. Henderson and Martha Nash, seem to have tacitly abandoned the suit, and M. Isabella Nash was thenceforth the only active plaintiff, though all the plaintiffs join in the appeal.

Upon this case, the presiding judge instructed the jury briefly, as follows: "that the proceedings of the Probate Court are not void and can not be inquired into in this suit. The plaintiff's remedy was in the Probate Court, before the guardian made his final settlement, or by a revision and correction of the settlement, and the orders and decrees of that court, by a proceeding in this court for that purpose." In accordance with the instruction of the court, the jury found for the defendant.

We are of opinion that the judge did not err in the instruction to the jury, and that there is no error in the judgment for which it ought to be reversed.

The original petition showed a good cause of action in the plaintiffs, because it merely stated their right of property in the negroes and their right to recover them from the defendant, who held the unlawful possession of them. But the case as developed by the answers and exhibits, showed that the plaintiffs were not entitled to recover upon the allegations of their original petition. It was shown to the court that the plaintiffs were under guardianship when the original petition was filed; or at least that their former guardian had not at that time closed his guardianship by settlement in the County Court. The order of the County Court authorizing the guardian to sell the negroes, the report of the sale, and the confirmation of it by the court, were also shown; and then it was shown that the guardian had settled his account with the court, had paid over to his wards their distributive shares of the estate which had been under his care, and had been finally discharged from his trust. The district judge was right in saying that he could not treat these orders and decrees of the County Court as void, upon the case presented by the plaintiffs. The orders and

decrees of the County Court being at most only voidable, the plaintiffs should have framed their petition in such manner as to have authorized the introduction of evidence to show that those orders and decrees ought to be set aside. The former guardian, Cooper Nash, ought to have been made a party, and an opportunity afforded him of showing the validity of the proceedings in the County Court. Although the proceedings in the County Court were irregular, and subject to be annulled or corrected, yet that could only be done upon proper pleadings and with proper parties before the court. Although the acts of the guardian, Cooper Nash, in the sale of the negroes, may not have been such as to vest a good title in the defendant, yet it appears that the guardian had accounted to the wards for the proceeds of the sale of the negroes, and although he may not have accounted fairly, yet so far as he did account, the defendant Milburn was entitled to the benefit of such accounting. The wards could not be permitted to receive from the guardian the proceeds of the pretended sale to Drewry Smith, and yet recover the negroes from Milburn, because the sale to Drewry Smith was a sham, and of no validity. To the extent to which the guardian has accounted with the wards, the defendant Milburn was entitled to protection, because he is not charged with fraud or collusion with the guardian, and has paid a large portion of the purchase money, and there is judgment against him for the balance.

We do not mean to be understood as saying that the defendant Milburn did not purchase under such circumstances as affected him with notice of all the proceedings of the guardian in the County Court, for he was told before he purchased the negroes from Nash that they had been sold by order of the County Court. If he had gone to the records of the court as it was his duty to do, he would have found that the sale by the guardian had never been reported to the court, and consequently had not been confirmed. The plaintiffs ought to have placed themselves in an attitude before the District Court to have shown the invalidity of the acts of the guardian, and to have corrected or set aside his settlement, and for these purposes the guardian ought to have been called into the suit, so that the equities between all the parties could have been ascer-

tained and enforced by the decree of the court. It may be that these objects can yet be accomplished in another action, but we leave that to the consideration of those interested. As the case is presented, we can do nothing but affirm the judgment of the District Court. It is ordered accordingly.

Judgment affirmed.